December 27th, 1904.

———————o———————

## No.  3592.

(Court of Appeal, Parish of Orleans.)

In Re JOHN F. LINDNER, PRAYING FOR POSSESSION.

Appeal from Civil District Court, Division "A."

W. W. Wall, for Plaintiff in Injunction, Appellant.

Theo. Contonio, for Defendant in Injunction, Appellee.

1. The law does not contemplate that the assessor shall test the validity of titles before making the assessment, and a *prima facie* title so suffered to remain unquestioned on the public records, forms the basis of a valid assessment sufficient to sustain a tax sale made under it.

2. The City taxes remained upon the property after the sale for State taxes, and the City had the right to proceed to their enforcement.

3. To hold that, where notice of intended sale has been given to the delinquent owner of record, another notice should be given to one subsequently acquiring the property, would enable delinquents to defeat the taxing power by the simple expedient of successive transfers of property *ad infinitum,* after as many successive notices of delinquency.

72

4. Law, public policy and the interest of the fisc alike forbid the adoption of a theory which makes possible the success of such evasive devices.

DUFOUR, J. This cause, remanded by us last term, comes before us with the following opinion and judgment.

"The showing made on the new trial of this cause is very different from that on the original hearing, caused by the filing in evidence of the tax deed of J. P. Martinez, of date August 10th, 1886, recorded August 17th, 1886, under an adjudication of May 21st, 1886, to pay the State taxes of 1871-73-6-7 and 8, assessed in the name of Ant. Blanchin. The sale was under Act 82 of 1884. Ant. Blanchin died November 23rd, 1873, so that there was correct assessment from the years 1871 and 1873, in the name of the living owner."

"The act of 1884, No. 82, carries the presumption that the delinquent roll of 1871 had been recorded, that the property was forfeited to the State, and on this the adjudication of May 21st, 1886, followed by the registered tax deed of August 10th, 1885, vested the State title in J. P. Martinez."

"It was assessed in Martinez's name and adjudicated to J. F. Lindner, October 26th, 1901, and a tax deed passed and recorded accordingly."

"It was on this title that J. F. Lindner relies and asks for possession. W. H. Howcott's title is from the Auditor, of date May 1st, 1901, based on an adjudication to the State, February, 1885, on an assessment for the taxes of 1882, in the name of Antoine Blanchin. Blanchin died in November, 1873. . The adjudication to the State was a nullity, for not only was the assessment in the name of a dead man, but the notice required by the Constitution of 1879 could not have possibly been given."

"I must, therefore, hold that W. H. Howcott has no title, and that J. F. Lindner's title is good and valid, and that under it Lindner is entitled to possession as owner. Judgment will be

entered in favor of John F. Lindner, dissolving the injunction of W. H. Howcott at cost of W. H. Howcott, and ordering the Sheriff to execute the writ of possession obtained by said Lindner, and place him in possession of the property herein involved."

(Signed)    T. C. W. ELLIS,<br>Judge.

In reference to the claim that Martinez had no title because of his failure to pay certain taxes assumed by him, we may say that under established jurisprudence, the assessment in the name of Martinez, the owner of record, was a proper one. The law does not contemplate that the assessor shall test the validity of titles before making the assessment, and a *prima .facie* title basis of valid assessment sufficient to sustain a tax sale made under it. The City taxes remained upon the property after the sale for the State taxes, and the City had the right to proceed to their enforcement. 44 An. 650; 46 An. 530; 51 An. 572.

Notice of delinquency was served on Martinez in April, 1900, whilst he was owner of record, and neither the State nor anyone else had taken any steps to dispossess him or erase the registry of his name.

Howcott's title from the State was acquired after the service of notice of intended sale by the City.

To hold that notice should have been given to him also under the circumstances would enable delinquents to defeat the taxing power by the simple expedient as successive transfers of property *ad infinitum* after as many successive notices of delinquency.

Law, public policy and the interest of the fisc alike forbid the adoption of a theory which makes possible the success of such evasive devices.

Judgment affirmed.

December 27th, 1904.

Reversed by Supreme Court.